IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-80-BR

| | |
|---|---|
| JAMES CRUMEL,<br><br>       Plaintiff,<br><br>v.<br><br>KROSS, LIEBERMAN & STONE, INC.,<br><br>       Defendant. | ORDER |

      This matter comes before the court on the parties' cross-motions for summary judgment. (DE ## 12, 15.)

      After plaintiff James Crumel ("plaintiff") filed a motion for partial summary judgment, (DE # 12), defendant Kross, Lieberman & Stone, Inc. ("defendant") filed a consolidated response and cross-motion for summary judgment, (DE # 15). Plaintiff filed a consolidated reply in support of his motion and response in opposition to defendant's motion. (DE # 16.) Defendant replied by objecting to the timing and form of plaintiff's reply and, alternatively, requests the court to supplement the record with an unpublished opinion cited by plaintiff. (DE # 17.)

## I. BACKGROUND

      Plaintiff commenced this lawsuit on 12 February 2014 alleging that defendant violated the Fair Debt Collection Practices Act ("FDCPA") and the North Carolina Collection Agency Act ("NCCAA"). (Compl., DE # 1, ¶ 1.) The relevant facts of this case, which are limited to the content of two letters, are not in dispute. After defendant attempted to collect from plaintiff an

alleged debt, plaintiff sent defendant a signed letter dated 16 March 2013 ("16 March letter"), which reads, in relevant part:

> I am disputing the above-referenced debt. Please verify this debt as required by the [FDCPA].
> . . . .
> Aside from verification of the debt, if this is not removed from credit reporting agencies I hereby request the collection agency's license number in the consumer's state of residence, name and address of the original creditor for the debt, proof that the collection agency was hired by the original creditor to collect the debt, an explanation of the amount requested by the collection agency, and do not contact me about this debt. The [FDCPA], 15 USC Section 1692c requires that you honor this request. Your cooperation will be appreciated.

(DE # 13-2, at 1.)[1] In response, defendant sent plaintiff a letter dated 29 March 2013 ("29 March letter") stating, in part:

> Please find enclosed the documentation that you requested from this office in reference to the above client's claim.
> Hopefully, this document will help resolve this matter and expedite the receipt of full payment on this account. Please forward your check of $41.93 made payable to KROSS, LIEBERMAN & STONE as soon as possible.

(DE # 13-3, at 1.)[2]

## II. LEGAL STANDARD

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As noted above, the parties do not dispute the relevant facts. As this case turns on purely legal questions, it is properly decided at the summary judgment stage. See OneBeacon Ins. Co v. Metro Ready-Mix, Inc., 242 F. App'x 936, 939 (4th Cir. 2007) (unpublished) ("Because the facts

---

[1] Citation of exhibits is to the page number generated by CM/ECF.
[2] As explained below, the 29 March letter constitutes the only alleged unlawful action of defendant enumerated in plaintiff's complaint. Defendant has detailed several other communications between it and plaintiff, all of which occurred subsequent to 29 March. Thus, these communications have no bearing on whether the 29 March letter was unlawful.

are undisputed and we are presented with a purely legal question . . . the case is ripe for summary judgment.").

### III. DISCUSSION

**A. Defendant's objections to plaintiff's consolidated reply and response brief**

Defendant asks the court to reject plaintiff's consolidated reply and response brief, (DE # 16), for failing to comply with the Local Civil Rules of the Eastern District of North Carolina. (DE # 17, at 1.) Specifically, defendant contends that plaintiff's brief exceeded the page limitation, was untimely, and relied on an unpublished case that plaintiff never provided to opposing counsel or the court. (Id.)

Local Civil Rule 7.1(f)(1) requires a party filing a reply brief to do so "within fourteen (14) days after service of the response . . . ." Defendant served a consolidated brief in response to plaintiff's partial summary judgment motion and in support of its own cross-motion for summary judgment on 26 January 2015. (DE # 15.) Plaintiff filed a consolidated reply in support of his motion and response in opposition to defendant's cross-motion on 14 February 2015. (DE # 16.) To the extent the filing served as a reply, it was untimely. However, Local Civil Rule 7.1(e)(1) affords a party twenty-one days to file a response after service of the motion. Thus, to the extent the filing served as a response to defendant's summary judgment motion, it was timely. The court views plaintiff's decision to file a consolidated reply and response as an efficient use of resources. Accordingly, the court will not exclude plaintiff's consolidated filing from consideration based on any violation of Rule 7.1(f)(1).

Pursuant to Local Civil Rule 7.2(e), "[r]eply memoranda . . . shall not exceed ten (10) pages in length, excluding the certificate of service page, without prior court approval." Plaintiff's consolidated brief is thirteen pages long. The court finds defendant's Rule 7.2(e) objection unavailing. Had plaintiff filed separate reply and response briefs, he would have been

3

allowed a combined forty pages, as Rule 7.2(e) allows a response brief to total thirty pages. Plaintiff's thirteen page consolidated brief is well within the Local Rule's prescribed page limitations.

Local Civil Rule 7.2(d) states, "Unpublished decisions may be cited only if the unpublished decision is furnished to the court and to opposing parties or their counsel when the memorandum is filed." In his consolidated brief, plaintiff relied on the unpublished decision of Duby v. Shermeta, Adams & Von Allmen, P.C., No. 12-12775, 2012 WL 6705413 (E.D. Mich. Dec. 26, 2012), without providing the court or opposing party a copy of the decision. Defendant urges the court to reject plaintiff's brief on this ground, or, in the alternative, to accept defendant's attachment of the Duby case to its own brief. (DE # 17, at 1.) While emphasizing to plaintiff the importance of complying with the Local Civil Rules, the court will accept defendant's provision of Duby and give due consideration to the case.

### B. FDCPA claim

In order to prevail on his FDCPA claim, plaintiff must prove that: "'(1) [he] has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" Boosahda v. Providence Dane LLC, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (unpublished) (quoting Ruggia v. Washington Mut., 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)) (alteration added). Plaintiff has alleged, and defendant has admitted, that the first two elements are present. (Compl., DE # 1, ¶¶ 4-6; Ans., DE # 8, ¶¶ 4-6.) Thus, only the third element is at issue in this case.

Plaintiff contends that defendant's 29 March letter, to the extent it demanded payment of the debt, violated § 1692c(c) of the FDCPA, which states, in part:

4

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> > **(1)** to advise the consumer that the debt collector's further efforts are being terminated;
> >
> > **(2)** to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> >
> > **(3)** where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> . . . .

15 U.S.C. § 1692c(c).

Defendant maintains that plaintiff's 16 March letter did not constitute a § 1692c(c) cease communication directive, but rather only a notification of dispute and request for verification under § 1692g(b), which provides, in part:

> If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

15 U.S.C. § 1692g(b). Defendant states that to have acquired § 1692c(c)'s protections, plaintiff must have included in his letter "a refusal to pay the Debt or a request that *all* communications cease." (DE # 15, at 9 (emphasis added).) Defendant reasons that a request for debt verification can never accompany a valid cease communication directive as the former necessarily anticipates future communication regarding the debt. (Id. at 11-12 ("[Plaintiff] cannot make both a [] § 1692c(c) demand while still seeking information outlined in the Validation Statute.").) Defendant argues that its 29 March letter was a permissible response to plaintiff's request for

5

verification. (Id. at 5-6.) It notes that § 1692g(b) requires such a response in order for defendant to permissibly resume collection efforts. (Id.) Even if the court were to find that plaintiff's 16 March letter contained a valid cease communication directive, defendant contends that plaintiff's request for verification waived his rights under § 1692c(c) to be free from future communication regarding the debt. (Id. at 13.)

In response, plaintiff argues that the FDCPA grants consumers both a right to request validation[3] and a right to demand that a debt collector cease further communication regarding the debt. (DE # 16, at 4.) Plaintiff asserts that "these rights are not mutually exclusive and consumers are not forced to elect one right over the other. Further, there is no requirement that a request for validation be in a separate communication from a cease and desist request . . . ." (Id.) While plaintiff acknowledges "that Defendant was entitled to communicate with him regarding the verification of the debt," he contends that defendant crossed into impermissible territory when it continued its collection efforts in the same letter. (DE # 13, at 7.)

Congress intended the FDCPA to "eliminat[e] abusive, deceptive, and unfair debt collection practices." Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 490 (4th Cir. 2014) (citing 15 U.S.C. § 1692). As a backdrop for its analysis, the court recognizes its "obligation to construe broadly the FDCPA to effectuate its remedial purpose." Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 529 (D. Md. 2013) (citing Glover v. F.D.I.C., 698 F.3d 139, 149 (3d Cir. 2012)). At the same time, the court gives due consideration to the fact that Congress attempted to broadly protect consumers "'without imposing unnecessary restrictions on ethical debt collectors.'" Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d 310, 317 (D. Md. 2014) (quoting S. Rep. No. 95-382, at 1-2 (1977)).

---

[3] In line with both § 1692g and the parties' briefs, the court will use "verification" and "validation" interchangeably.

6

To determine whether a consumer may demand debt verification and issue a cease communication directive simultaneously, the court begins by examining the language of the two FDCPA provisions at issue — § 1692c(c) and § 1692g(b).  See Stone v. Instrumentation Lab. Co., 591 F.3d 239, 245 (4th Cir. 2009) (noting that statutory construction starts "with the text of the statute").  As noted above, § 1692c(c) requires a debt collector to cease communication regarding a debt if the consumer so requests in writing.  However, even after a cease communication directive, the statute allows the debt collector to contact the consumer in three particular circumstances, 15 U.S.C. § 1692c(c)(1)-(3), which defendant acknowledges do not apply in this case, (DE # 15, at 9).

Section 1692g(b) permits a consumer to require a debt collector to verify the debt.  Once verification is requested, "the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."  Id. § 1692g(b).

In plaintiff's 16 March letter, he stated, "Aside from verification of the debt . . . do not contact me about this debt."  (DE # 13-2, at 1.)  Nothing on the face of the two statutory provisions at issue suggests that a consumer cannot make such a demand.  Contrary to defendant's intimation, the text of § 1692c(c) does not require a plaintiff to demand that *all* further communication cease.  Thus, consistent with the text of §1692c(c), a consumer may demand that a debt collector cease further communication regarding the debt, with the exception of certain information that a consumer requests.  Cf. Montgomery v. Shermeta, Adams & Von Allmen, P.C., 885 F. Supp. 2d 849, 856 (W.D. Mich. 2012) (denying debt collector's summary judgment motion where debt collector requested that consumer contact it to discuss payment of the debt after consumer sent combined validation request and cease communication directive).

7

Subject only to the three statutory exceptions, Congress provided the consumer with the power of the cease communication directive, and a consumer may exercise such power to the extent he or she wishes.

Case law further demonstrates that § 1692c(c) and § 1692g(b) need not be read incongruously. In Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1170 (9th Cir. 2006), the Ninth Circuit Court of Appeals held that a consumer "may waive the rights created by a cease communication directive." However, the court stated that it would "enforce a waiver . . . only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)." Id. at 1171.

Defendant cites Clark for the proposition that in seeking verification, a consumer fully waives any prior cease communication directive. (DE # 15, at 11.) Defendant misconstrues Clark's holding. Nowhere in the court's opinion did it suggest that a debtor's waiver as to specific information constitutes a complete waiver of a cease communication directive. Rather, the court indicated just the opposite when it stated that "even the least sophisticated debtor would recognize that [the debtor's] request for information constituted consent for [the collection agency to communicate with the debtor] *in order to provide the specific information she requested*." 460 F.3d at 1172 (emphasis added); see also id. at 1181 (O'Scannlain, J., concurring in part, dissenting in part) ("[The debtor] waived her right to avoid a return communication — *albeit one specifically limited to providing the information requested*." (emphasis added)).

In the instant case, the court finds that plaintiff's 16 March letter was a valid exercise of his § 1692c(c) rights.[4] Further, plaintiff's request for verification constituted a waiver of his cease communication directive, but only with respect to the verification information. See

---

[4] As further evidence that plaintiff validly asserted his right to have defendant cease further communications, the court notes that in his 16 March letter, plaintiff specifically referenced 15 U.S.C. § 1692c as the basis of his demand.

8

Mammen v. Bronson & Migliaccio, LLP, 715 F. Supp. 2d 1210, 1217 (M.D. Fla. 2009) ("The Court notes that Plaintiff's request for verification of debt is a waiver of the 'cease communication' directive with respect to verification of the debt."). Beyond verification, plaintiff did not knowingly waive his § 1692c(c) rights. Thus, the only remaining question is whether defendant's 29 March letter exceeded the scope of plaintiff's waiver of his cease communication directive. The court concludes that it did.

Defendant argues that the FDCPA permits a debt collector to make a demand for payment within the verification letter, and that such a practice "promotes the legislative intent of the [statute]." (DE # 15, at 7.) In support of this position, defendant relies on Harrison v. NBD Inc., 968 F. Supp. 837 (E.D.N.Y. 1997), and claims there the "[c]ourt refused to find that a demand for payment within a debt collector's validation somehow alters its purpose or contradicts the intent of the FDCPA." (DE # 15, at 7.) Defendant has also misconstrued this decision. In Harrison, the court examined the question of whether a debt collector's demand for payment within the *initial* notice of the debt was proper.[5] 968 F. Supp. at 845. At the time the debt collector made the payment demand, the consumer had neither requested verification nor demanded that further communication cease. Id. Unlike Harrison, in the instant case, defendant included a demand for payment within its response to plaintiff's request for verification and after plaintiff requested that all further communication cease, apart from verification. Accordingly, Harrison is not germane to the question before this court.[6]

---

[5] 15 U.S.C. § 1692g(a) requires a debt collector to send a consumer an initial written notice of the debt which must include, among other things, a notice of the consumer's right to dispute the debt and request verification. At this point in the debt collection process, a debt collector may permissibly continue collection efforts so long as such efforts do not "overshadow . . . the disclosure of the consumer's right[s] . . . ." § 1692g(b).

[6] Defendant also cites Anthes v. Transworld Sys., Inc., 765 F. Supp. 162 (D. Del. 1991), and Smith v. Fin. Collection Agencies, 770 F. Supp. 232 (D. Del. 1991), in favor of its position that demand language may be included in a debt collector's validation of the debt. However, both cases, like Harrison, address the propriety of demand language included in the initial notice. In neither case had the consumer requested verification or issued a cease communication directive. Thus, these cases are equally inapposite.

9

The Fourth Circuit Court of Appeals has stated that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). In its 29 March letter, defendant wrote, "Please forward your check of $41.93 made payable to KROSS, LIEBERMAN & STONE as soon as possible." (DE # 13-3, at 1.) This statement constitutes an unequivocal demand for full payment of the debt. In waiving his § 1692c(c) rights with regard to debt verification, plaintiff did not waive his right to be free from further communication demanding payment of the debt. Therefore, defendant's 29 March letter, to the extent it demanded payment of the debt, violated plaintiff's request that defendant not contact him apart from verifying the debt. Although this violation occurred only once and amounts to nothing more than one sentence of an otherwise-permissible communication, the court recognizes that the "FDCPA is a strict liability statute and a consumer has only to prove one violation in order to trigger liability." Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 725 (D. Md. 2011).

The court's conclusion gives proper weight to the broad remedial purpose of the FDCPA while not imposing unnecessary restrictions on defendant. Contrary to defendant's argument, this outcome does not "force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to resolve the debt . . . ." (DE # 15, at 7 (quoting Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998)).) For example, defendant could have included within its 29 March verification letter a settlement offer, payment plan options, or a demand for arbitration in an effort to resolve the debt without resorting to litigation. Many courts find that such communications fall

within the § 1692c(c)(2) exception which permits a debt collector who has received a cease communication directive to notify the consumer that it intends to "invoke specified remedies which are ordinarily invoked by such debt collector . . . ." See Lewis, 135 F.3d at 399 (finding that debt collector's offer of payment options fit within the § 1692c(c)(2) exception as it was a remedy typically invoked by the debt collector); Garcia v. Gurstel Chargo, P.A., No. 2:12-CV-1930 JWS, 2013 WL 4478919, at *4-5 (D. Ariz. Aug. 21, 2013) (finding that a debt collector's communication offering "an avenue to discuss resolution of the debt" fit within the § 1692c(c)(2) exception (internal quotation omitted)). In this case, defendant was not confronted with the unwelcome choice of either ceasing collection efforts or filing suit, as several other options for resolving the debt remained open to it.

In sum, defendant's 29 March letter, to the extent it demanded payment of the alleged debt, exceeded the scope of plaintiff's waiver of his cease communication directive, and, thus, constitutes a violation of § 1692c(c). Plaintiff is entitled to judgment in his favor on this claim.

**C. NCCAA claim**

Defendant has moved for summary judgment on plaintiff's NCCAA claim, arguing that the "complaint is legally and factually insufficient" to support the claim. (DE # 15, at 18.) In his complaint, plaintiff alleges that "Defendant violated the NCCAA by acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the NCCAA." (Compl., DE # 1, ¶ 14.) Defendant contends that plaintiff "has not and cannot identify any activity committed by [defendant] that violated the [NCCAA] . . . ." (DE # 15, at 18.) In response, plaintiff makes no attempt to identify a genuine issue for trial, but instead argues that because he did not move for summary judgment on his NCCAA claim, he "was not required to produce any

evidence or documents to this Court to support [the NCCAA] claim at this juncture." (DE # 16, at 11.)

Contrary to plaintiff's argument, he *was* required to show the court that a genuine issue for trial exists. Defendant met its initial burden under Federal Rule of Civil Procedure 56 by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp v. Catrett, 477 U.S. 317, 325 (1986). In response, plaintiff was required to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56). Plaintiff has failed to do so. He states only that defendant "act[ed] in an otherwise deceptive, unfair and unconscionable manner," but never specifies *how* defendant acted in such a manner. (Compl., DE # 1, ¶ 14.) Based on the evidence before the court, nothing indicates that defendant acted deceptively, unfairly, and/or unconscionably, which plaintiff must prove under the NCCAA. See N.C. GEN. STAT. §§ 58-70-110, -115. Thus, summary judgment in favor of defendant on plaintiff's NCCAA claim is warranted.

### D. Claims for damages and fees

#### 1. Statutory damages

Plaintiff asks the court to "[e]nter[] judgment against Defendant in the amount of $1,000 statutory damages . . . ." (DE # 13, at 10.) The FDCPA's damages provision, 15 U.S.C. § 1692k, provides, in relevant part, the following:

(a) Amount of damages

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> **(1)** any actual damage sustained by such person as a result of such failure;

> **(2)(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . . .

Plaintiff has not claimed any actual damages arising from defendant's FDCPA violation, and, thus, only discretionary damages under § 1692k(a)(2)(A) are at issue. Plaintiff asks the court to award him the statutory maximum.

When fashioning a proper award pursuant to § 1692k(a)(2)(A), the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." § 1692k(b)(1). The court notes that "the maximum statutory damage award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1000." Thomas v. Smith, Dean & Assocs., Inc., No. ELH-10-CV-3441, 2011 WL 2730787, at *3 (D. Md. July 12, 2011) (internal quotation omitted) (alteration in original) (report and recommendation), adopted, 2011 WL 3567043 (D. Md. Aug. 10, 2011).

A brief survey of cases in which courts have awarded damages pursuant to § 1692k(a)(2)(A) is instructive. In Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 594 (D. Md. 1999), the court awarded the statutory maximum of $1,000 after finding that defendant committed six separate violations of the FDCPA. In Thomas, the court awarded $500 where the defendant debt collector threatened jail time if plaintiff did not pay the debt and contacted plaintiff's employer more than once regarding the debt. 2011 WL 2730787, at *3. In Marchman v. Credit Solutions Corp., No. 6:010-cv-226-Orl-31GJK, 2011 WL 1560647, at *11 (M.D. Fla. Apr. 5, 2011), the court found proper a $100 award where defendant committed two, non-egregious FDCPA violations. The court in Carroll v. Paul Law Office, PLLC, Civil Action No. DKC 12-2041, 2013 WL 4008873, at *3 (D. Md. Aug. 2, 2013), awarded plaintiff $50 where

13

defendant debt collector attempted to collect on an already-settled account in violation of the FDCPA. The court found the award appropriate "given the minimal extent of the violation and lack of ill-intent." Id.

In the instant case, defendant's FDCPA violation amounted to one sentence of a letter in which defendant demanded payment of the debt "as soon as possible." (DE # 13-3, at 1.) The demand was contained in an otherwise-valid verification of the debt and was not aggressive, harassing, threatening, or egregious in any way. Further, the demand for payment appears to have been a non-intentional, technical violation of the FDCPA. In light of these considerations, the court finds that an award of $50 is justified.

### 2. Attorney's fees and costs

Pursuant to 15 U.S.C. § 1692k(a)(3), plaintiff is entitled to an award of reasonable costs and attorney's fees. Accordingly, the court will grant plaintiff leave to file with the court documentation supporting the reasonable costs and attorney's fees claimed in this action.

### IV. CONCLUSION

Based on the foregoing, plaintiff's motion for partial summary judgment, (DE # 12), is GRANTED, and defendant's motion for summary judgment, (DE # 15), is GRANTED IN PART and DENIED IN PART. Plaintiff's NCCAA claim is DISMISSED. Further, plaintiff is DIRECTED within 20 days to file with the court a memorandum with appropriate supporting documentation setting forth the reasonable attorney's fees and costs incurred in this action. Defendant may then file any response within 20 days of plaintiff's filing.

It is hereby ORDERED, ADJUDGED, and DECREED that plaintiff shall recover of defendant the sum of $50.00, with interest accruing thereon at the statutory rate, 28 U.S.C. §

1961, from this date until paid.

This 8 April 2015.

_____

W. Earl Britt

Senior U.S. District Judge